WISCONSIN & ARKANSAS LUMBER COMPANY *v.* MONTGOMERY.

Opinion delivered October 13, 1924.

1. NEGLIGENCE—MISTAKE OF JUDGMENT.—Where one is called upon suddenly in an emergency to do something for a person in a perilous position, a mere mistake of judgment does not constitute negligence as a matter of law.

2. MASTER AND SERVANT—NEGLIGENCE OF FELLOW-SERVANT.—A fellow-servant engaged in operating a machine for loading logs on cars was not guilty of negligence where, on hearing cry of distress from plaintiff, whom he could not see, he reversed the machine, instead of stopping it.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler*, Judge; reversed.

*E. B. Kinsworthy* and *B. S. Kinsworthy,* for appellant.

Where one is placed in a position where he has to act in a certain emergency, he is not liable for a mistake of judgment. 25 N. Y. Supp. 91; 104 Va. 400; 51 S. E. 731; 37 L. R. A. (N. S.) 43. Especially so where the peril has been caused by the fault of another. 91 Ark. 388; 67 Ark. 209; 84 Ark. 241; 102 Ark. 499; 153 Pa. 117; 25 Atl. 994; 113 Ill. App. 312. There was no evidence to show any negligence on the part of the defendant. 105 Ark. 364.

*H. B. Means,* for appellee.

McCULLOCH, C. J. Appellee received personal injuries while working in the service of appellant, and he sues to recover damages, claiming that his injuries occurred by negligence of other servants of appellant.

Appellee and other servants of appellant performed services in connection with the operation of a machine used in the loading of logs on flat-cars, lifting the logs from the ground and placing them on the cars, to be hauled to the mill. The machine consisted of a cab inclosing an engine and hoisting apparatus, and the lifter, or "boom," as it is called, swung out of the front end of the cab. The logs on the ground were picked up with tongs attached to the end of the boom, and, as the cab with the boom attached to it swung around, the log was hoisted and carried to the car in front of the cab. The cab rested on a frame which rolled along the track running along the string of cars to be loaded. As a car was loaded, the loading machine would be moved back to the next car, and this process was continued until all the cars in the string were loaded. Appellant was engaged in hooking the tongs, that is, in attaching the tongs to the logs as they were loaded. There were four men employed in that work, and they worked in pairs on alternate days. The men would work one day and rest the next, with no duty to perform except to be present and assist in moving the loader from one car to another after the car had been completely loaded.

The day on which appellant was injured was a rest day for him and his co-worker, and, according to

the testimony, appellant had placed himself on the opposite side of the cab from the pile of logs on the ground which were being loaded on the car. He was waiting there to assist in moving the loader to the next car, and, with a cross-bar in his hand, he sat down on the axle of the car. Nichols was the foreman of the crew and had charge of the loading machine. He also operated the loader, his position being in the cab, which was inclosed on two sides.

Appellee, as before stated, had a cross-bar in his hand while he was sitting on the axle waiting for orders to transfer the loader, and he testified that he had the cross-bar for the purpose of pushing the wheels of the frame of the loader over to the next car and transferring it, and that, when he got up from his sitting position, he slipped and fell, and the corner of the cab, which was then swinging around with a log on the boom, caught him and drew him under the cab between it and the frame on which it rested. He testified that, as soon as he was caught, he hollered, and so did another operative, named Shinn, who was standing to one side. Nichols, who was operating the loader at that time, heard the distress call, and immediately reversed the loader, and appellee was mashed and his collar-bone broken.

The undisputed testimony is that Nichols could not see the position appellee was in at the time, nor did he know that appellee was in a position of danger until he heard the voices of appellee and Shinn.

It is not contended that there was any negligence on the part of appellant or any of its servants in moving the loader and causing it to strike appellee, nor is there any evidence that Nichols knew or had reason to believe that appellee would be injured by the moving of the loader in its ordinary operation. The sole contention is that Nichols was guilty of negligence in reversing the loader after he received notice of appellee's perilous position. In other words, the only theory upon which appellee seeks to sustain the recovery of damages is that his perilous position was discovered and that Nichols failed to

exercise ordinary care to protect him after receiving notice of the danger. On the other hand, it is earnestly insisted on the part of counsel for appellant that Nichols was not guilty of any negligence in reversing the loader after hearing the distress call of appellee from his position of peril.

The only testimony which tends in any degree to show negligence on the part of Nichols is that of appellee himself, who stated in his testimony that, after he was caught and drawn in under the loader and the loader was brought to a stop, he believed he could have been pulled out without serious injury, as he expressed it, except "a good tight mashing." He expressed this merely as his opinion, but explained that he had never been in such a situation before. Appellee stated the situation with respect to the injury as follows:

"Q. Now tell what happened after the foreman was notified that you were caught? A. Why, he turned and pulled the loader back. When he started turning back, I had this arm here, and when it turned back it pressed so tight that this elbow that the wheel was right over here, and this elbow hit the wheel, and it couldn't slip any way, so it just pulled all of this part of my back up here, and it broke the collar bone and pushed all this side of me up under my ear. Now I could have rolled out of there without their moving the machine."

We are of the opinion that it was purely a matter of speculation to say that the reversal of the loader was an act which contributed to appellee's injury. It is clear that the act of Nichols in thus reversing the loader was, to say the worst of it, only a mistake of judgment. He was acting suddenly and in an emergency, and he was called on to do something for a person who was in a perilous position, and a mere mistake of judgment does not necessarily constitute negligence. We have often said that a mistake of judgment does not, as a matter of law, constitute negligence. *St. L. I. M. & S. Ry. Co.* v. *Touhey,* 67 Ark. 209; *Woodson* v. *Prescott & N. W. Ry. Co.,* 91 Ark. 388; *Kansas City Southern Ry. Co.* v. *Wat-*

son, 102 Ark. 499. But we are convinced that the circumstances of the present case do not warrant the inference even that it was error in fact to reverse the loading machine, instead of stopping it and holding it in a stationary position, so as to let appellee crawl out from his position. The warning cry of appellee and his companion Shinn called for some action on the part of Nichols, who was operating the loader, and it called for action instantly. He could not see the injured man, and it was not unnatural for him to suppose that, as the injury had in some way been inflicted by the forward movement of the rear end of the cab, further injury would be averted by reversing the movement so as to enable the injured man to get out of his perilous position. If Nichols saw, or could have ascertained at the moment, what the particular situation of appellee was, then the inference of negligence might be drawn from his failure to adopt a proper course to enable appellee to be extricated from his position of peril, but the undisputed testimony is that Nichols could not see the injured man and had no means of knowing just what his position was; but he knew, from the warning given him by appellee and Shinn, that appellee was in a perilous position and that some quick movement of the machine was called for, either to stop it and keep it stationary or to move it backward. As before stated, it was a natural thing to suppose that the best way to avert further injury was to move the machine backward, as the injury had occurred by a forward movement.

Our conclusion therefore is that there was no negligence, and the court erred in submitting the question to the jury.

Reversed and remanded for new trial.